[Civ. No. 9691. Second Appellate District, Division Two.—April 26, 1935.]

LILLIAN D. KENT, Respondent, v. J. M. KENT et al., Defendants; A. F. GILMORE CO. (a Corporation) et al., Appellants.

Salisbury & Robinson, B. R. Ware, Frank Mergenthaler, James M. Lewis, Edgar K. Brown and Leo B. George for Appellants.

Freston & Files and Ralph E. Lewis for Respondent.

FRICKE, J., *pro tem.*—Action to enforce the statutory liability of stockholders of the Ethyl Oil Company arising out of a loan of $50,000 made to that corporation by Bank of America and evidenced by a promissory note.

Appellants challenge the right of plaintiff to bring this action. It appears that the note sued upon was guaranteed by C. F. Whittier and J. M. Kent, president and vice-president of the borrower, and, the note not being paid, the bank sued the corporation and the guarantors and attached certain property which plaintiff here, Lillian D. Kent, claimed as her sole and separate property. Lillian D. Kent and J. M. Kent then entered into an agreement with the bank whereby, in consideration of the release of the attachment, they agreed to join as trustors in the execution of

trust deeds upon the attached property as security to the extent of $25,000 upon the $50,000 note and to the extent of $25,000 against a separate obligation of J. M. Kent to the bank. In addition to releasing the attachment the bank agreed that as soon as the obligation of Ethyl Oil Company had been reduced to $50,000 or less the bank would deliver the note of the oil company to Lillian D. Kent for such action as she might care to take, with the understanding that any money she might collect on the note should be paid to the bank for credit toward satisfaction of the trust deed obligations.

Before the commencement of this action the bank endorsed upon the note an assignment thereof to Lillian D. Kent "for the purpose of collection only", pursuant to the above mentioned agreement. The note remained in the possession of the bank, subject to the right of the assignee to obtain it at any time she desired, and was obtained by her shortly before the trial and introduced in evidence. The bank further executed and delivered to plaintiff a separate assignment transferring to her the "debt, obligation and/or liability in its favor and against the stockholders of Ethyl Oil Company" for the moneys advanced by the bank and which debt was evidenced by the promissory note, the assignment providing that any moneys collected thereunder be paid to the bank to apply under the above mentioned agreement with Lillian D. Kent and J. M. Kent.

Appellants' contention that the plaintiff had not acquired the right to bring this action is based upon the fact that the note was not delivered to plaintiff until after the action was brought. The cases holding that a transfer of a negotiable instrument by endorsement is not complete without both delivery and valid endorsement of the instrument are not in point, as the case at bar is not one of transfer by endorsement but of transfer by assignment. A promissory note may be transferred by assignment without endorsement as well as by endorsement (*Barling* v. *Weeks*, 4 Cal. App. 455 [88 Pac. 502]), and "the endorsement or assignment of the instrument by a corporation . . . passes the property therein" (Civ. Code, sec. 3103). The assignment of a promissory note is fully effective without the transfer of possession of the note itself. (*Burkett* v. *Doty*, 32 Cal. App.

337 [162 Pac. 1042].) The fact that the plaintiff as assignee was obligated under the agreement and the conditions of the assignment to turn moneys collected thereunder over to the bank does not affect the validity or effect of the assignment, and the disposition of moneys so collected is of no concern to appellants but is a matter solely between the assignor and assignee. The assignment fully qualified plaintiff to bring the action.

■ Appellants' main contention is that they were not stockholders because they secured their stock under a violation of the corporation commissioner's permit and the stock was therefore void. The permit authorized Ethyl Oil Company to sell and issue 250,000 shares of capital stock in the manner following: 1st: To issue 20,000 shares to three named persons in exchange for certain lease interests; 2d: after the corporation received the consideration and issued the shares as above provided, to sell 184,000 shares for cash; and 3d: to sell 46,000 shares in exchange for services rendered the corporation by certain designated persons. By a supplementary permit the corporation was authorized to sell 208,334 shares for cash and to issue 41,666 shares to certain named persons for services. It appears conceded that the first 20,000 shares were properly issued. A. F. Gilmore and J. C. Axelson each paid cash for 10,000 shares, each receiving 12,000 shares. Midway Premier Oil Company paid cash for 37,500 shares, and received 47,525 shares. From this it is argued that said appellants did not pay the full value in cash for the stock they received, a contention which would be well founded if, in fact, the excess numbers of shares came from the corporation. There is, however, evidence from which the court was warranted in concluding that the additional 2,000 shares to Gilmore were received by him not under his stock subscription but some five months after he received the 10,000 shares through private arrangements with the president of the corporation, and were shares belonging to such president, having been issued to him as part of the 46,000 shares of promotion stock authorized by the permit. The difference in the number of shares received by Axelson and the Midway company under their subscriptions and the cash payments and the number of shares eventually owned by them is similarly

accounted for in the evidence. The bonus shares, coming not from the corporation but from the private holdings of the president of the company, there was no violation of the permit and the shares of appellants were not void.

The final contention of appellants is based upon the fact that 25,500 shares of stock which under the permit should have been sold for cash were exchanged for property. Such stock was void under the Corporate Securities Act as it existed before 1931 (*Kahle* v. *Stephens,* 214 Cal. 89 [4 Pac. (2d) 145]; *Regan* v. *Albin,* 219 Cal. 357 [26 Pac. (2d) 475]), and it is the claim of appellants that the issuance of these void shares rendered void all of the issued shares. The precise point does not appear to have been previously decided in this state. The nearest approach to the question which has come to our attention is the case of *Imperial Livestock etc. Co.* v. *Tracy,* 208 Cal. 205 [281 Pac. 50], in which the permit of the corporation commissioner authorized sales of stock by the payment of 25 per cent of the par value in cash and the balance to be paid by promissory notes. The defendant Tracy subscribed in four instances for stock without paying any cash, and this stock was held void. As to a fifth subscription, in which the 25 per cent was paid in cash and the balance evidenced by a note, the court in effect held the subscriber liable upon the note, a conclusion which could not have been reached if that subscription had been made void by the four void subscriptions. The Corporate Securities Act as it existed at the time of the stock issue here involved provided that every security issued without a permit of the corporation commissioner authorizing the same should be void. We do not believe that this language can be construed to mean that the issue of a part of the shares of a corporation without a permit should render the entire stock issue void, and had such been the intention of the legislature it would doubtless have employed language declaring such an intent. While it was the evident object of the section to prevent any rights of a shareholder against the corporation, or any rights of the corporation against the subscriber to its shares, from arising where the issue of shares violated the statute, there is no apparent reason why the issue of some shares in violation of the statute should render void other shares, whether

issued before or after those unlawfully issued, where such other shares are lawfully issued. The section is clearly limited to the single effect of declaring void those shares not issued in accordance with the required permit.

The judgment is affirmed.

Crail, J., and Stephens, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1935.