[Civ. No. 2518. Fourth Appellate District.—March 7, 1940.]

FREDERICK L. RAY, Appellant, v. RALPH A. FREE-MAN et al., Respondents.

August J. O'Connor and P. James Kirby for Appellant.

Irl D. Brett for Respondents.

BARNARD, P. J.—The plaintiff had been conducting a certain business and the defendants Freeman had been conducting a similar business. The parties agreed to form a corporation to which the assets of the respective businesses should be turned over and which should thereafter conduct the combined business. To this end a corporation, Master Products Company, Inc., was organized, articles of incorporation being filed on August 27, 1935, which provided for an authorized capital stock of 10,000 shares at a par value of one dollar each. Directors were elected and the plaintiff was elected president. The board of directors adopted a resolution accepting the propositions of the plaintiff and of the Freemans, respectively, to assign the assets of the former business of each to the corporation in exchange for 5,000 shares of its capital stock. In accordance with a resolution of the directors an application for a permit to issue such stock was prepared and signed by the officers of the corporation, but was never filed with the commissioner of corporations. However, the assets referred to were turned over by the parties to the corporation which proceeded to operate the combined busi-

ness, mingling the assets thus acquired, selling parts thereof, buying new materials and creating debts.

As a result of differences which arose between the parties the plaintiff, on May 6, 1936, resigned as president and as a director of the corporation and, on May 28, 1936, this action was brought. The complaint alleged that the parties were operating as a partnership and prayed for a dissolution and accounting. In a second amended complaint a count was added alleging that the parties had organized a corporation and had been operating under the corporate name and title but no stock had been issued; that the plaintiff and the defendants Freeman had contributed certain goods, machinery and money, respectively, for which they each were to receive 50 per cent of any and all stock issued; that the assets so contributed and those since acquired were worth $8,000; and that there was a dispute between them as to whether they were operating as a copartnership or as a corporation. The prayer was that the court determined this question and ''on finding it to be either a corporation or a copartnership, that the court decree a dissolution of the same,'' and that the court decide the relative rights and obligations of the parties and make a distribution of the assets accordingly.

Among other things, the court found that the business was being conducted by a corporation and not by the parties as a copartnership; that the assets which had been turned over to the corporation by the parties had been commingled with other assets which had been acquired; that an application had been prepared asking for permission to issue stock in payment of the assets contributed by the parties, which was to be divided and issued 50 per cent to the plaintiff and 50 per cent to the defendants Freeman; that this application was not filed, which fact was not known to the defendants Freeman until May 16, 1936; that the corporation and the defendants Freeman had never abandoned the intention to apply for a permit for the issuance of stock as thus agreed upon; and that the board of directors of the corporation had authorized a new application for the issuance of said stock, the preparation of which was delayed by the bringing of this action. The court further found:

''That irrespective of the present value of the assets of the corporation, it was the intent and purpose of the parties to this action that the stock which the commissioner of cor-

porations shall authorize to be issued for the property contributed to the corporation by the parties to this action and for any assets which have accrued since incorporation (other than as specific contributions, by any of said parties or by third parties, if any) were to be divided and issued 50 per cent to plaintiff and 50 per cent to defendants.''

An interlocutory judgment was filed on November 16, 1936, in which it was ordered that the defendant corporation and the defendants Freeman, as a majority of the directors thereof, cause an application to be filed with the commissioner of corporations praying for a permit to issue and sell its capital stock ''in such amount as it may be entitled to issue for the contributions to defendant corporation heretofore made by plaintiff, Frederick L. Ray, and by defendants, Ralph A. Freeman, Rufus A. Freeman and Edna E. Freeman, including all accruals thereto, (other than separate contributions made by any party to this action or any other party, or parties, stock for which said contributions need not be divided as herein decreed) and, upon obtaining such permit, that such corporation shall cause to be executed and delivered 50 per cent of the stock so authorized to be issued to plaintiff and 50 per cent thereof to defendants, Ralph A. Freeman, Rufus A. Freeman and Edna E. Freeman, in such proportions as said Freemans shall agree upon; . . . '' It was then provided that this judgment should not be entered until sixty days from the date of its filing, whereupon it should be made final if it appeared that the provision for the issuance and delivery of stock had been complied with, and if this was not made to appear within that time, or any extension thereof, the court would make a further order and judgment.

Shortly after that judgment was filed the directors of the corporation authorized an application to the commissioner of corporations for permission to issue and sell 6,420 shares of its stock in exchange for the assets contributed by the parties hereto, 3,210 shares to be issued to this plaintiff and 3,210 shares to the Freemans. Such an application was prepared and submitted to the plaintiff's attorney, who approved it and asked that it be put through as soon as possible. This application was approved by the corporation commissioner and in accordance with his permit 3,210 shares of stock were issued to the plaintiff and a like number to the Freemans. The directors of the corporation then sold 500 shares to a

man named King and filed a supplemental application for permission to issue those shares, which was granted by the corporation commissioner. At the request of the plaintiff, a meeting for the election of new directors of the corporation was duly called and held on January 28, 1937. At this meeting the plaintiff protested the right of King to vote the 500 shares which had been issued to him. This protest being overruled, the plaintiff voted his 3,210 shares and elected himself and his attorney as two of the five directors of the corporation. He then participated in the meeting of the board of directors which followed. Thereafter, a final judgment was entered *nunc pro tunc* as of January 15, 1937, and this appeal is from that judgment.

The appellant's main contention is that the above-quoted finding, to the effect that it was the intent and purpose of the parties that the stock which the commissioner of corporations should authorize to be issued for the property turned into the corporation by the respective parties was to be divided and issued 50 per cent to the appellant and 50 per cent to the respondents Freeman, is not supported by the evidence and that the court thus erroneously made a new contract for the parties. It is argued "their actual agreement . . . was that each of the parties was to receive one-half of the total stated capital stock of the corporation, i. e., 5000 shares, in return for their respective contributions". The evidence does not support this contention and this argument. While the appellant in one part of his testimony stated that each of the contributing parties was to receive 5,000 shares of stock if, when and as the corporation commissioner permitted the corporation to issue the same, he further testified, in answer to a question by his own attorney as to the agreement arrived at between him and the Freemans with reference to the valuation of the property they were turning in, that "I had as much as they did in there, and they were willing to split it fifty-fifty. There was no actual value set at all." It was further stipulated at the trial that it was understood by the parties that the issuance of stock in payment for these assets was subject to the approval of the corporation commissioner. There is no evidence that the actual agreement of the parties was that each was to receive one-half of the total capital stock of the corporation, that is 5,000 shares, in the absence of the approval of the corporation

commissioner, and such an agreement, if made, would have been ineffectual. It cannot be assumed, under the evidence, that the parties intended or expected that 5,000 shares would be issued to each of them in the event the value of the assets turned in did not justify the issuance of that amount of stock. In fact the plaintiff alleged in his second cause of action that the assets first contributed by the parties, together with the assets since acquired, were of the value of only $8,000.

■ Apparently, appellant's real objection to this finding is to the part thereof in parentheses, which reads as follows: "(other than as specific contributions, by any of said parties or by third parties, if any)". It may be conceded that this portion of the finding should have been omitted since there was no evidence of any other contributions by the parties, or by third parties, and that the same is superfluous. However, it does not affect the result. Omitting that portion, the finding is that it was the intent and purpose of the parties to provide for an equal division of such stock as the commissioner of corporations might permit to be issued in payment for the assets contributed to the joint business, with any increase thereof. That finding is supported by the evidence and such an agreement is the only one that could have been made in view of the fact that the matter was necessarily subject to the approval of the corporation commissioner.

■ The appellant's real complaint is that after the trial 500 shares of stock were sold and issued to a third party. Nothing in the finding complained of enabled this to be done and it would have been equally possible had the portion contained in the parentheses been omitted. Had the original agreement, as contended for by the appellant, been carried out by the filing and granting of an application for permission to exchange stock for the assets turned into the corporation, each of the parties would have received less than 5,000 shares of stock since the value of the assets did not justify the issuance of the entire authorized stock. In that event, the directors could have sold the remaining stock if a permit for the same had been secured. The only difference would have been that the appellant would then have been a director and have had a voice in deciding upon whether or not the stock should be sold. The legal situation was the same after the trial of this action, although the appellant had theretofore

resigned as a director and thereby deprived himself of an opportunity to pass upon this question. The finding complained of is supported by the evidence, the court did not make a different contract for the parties, and the contract, as made, has been carried out.

A further consideration is that the appellant approved the application for permission to issue stock in payment for the assets contributed to the corporation which was filed pursuant to the court's order, that he accepted the stock thus issued and that, after knowledge of the sale and issuance of the stock to King, he participated in the stockholders' meeting and voted his stock and thereafter acted as a director of the corporation, having been elected such through the use of the stock issued to him in conformance with the decree. Having thus accepted the benefits of the decree and having received all that the evidence shows he was entitled to receive, he is not in a position to appeal from the judgment. (*Estate of Shaver*, 131 Cal. 219 [63 Pac. 340]; *Preluzsky* v. *Pacific Cooperative Co.*, 195 Cal. 290 [232 Pac. 970]; *County of San Bernardino* v. *County of Riverside*, 135 Cal. 618 [67 Pac. 1047].)

It is further contended that the court erred in finding that title to the assets contributed by the parties passed to the corporation. It is argued that the Corporate Securities Act provides that no corporation shall issue or sell any of its stock until it shall have received a permit authorizing it to do so. It clearly appears that these assets were turned over to the corporation to be paid for by the issue of stock upon the approval thereof by the corporation commissioner. This was done and it is immaterial, as far as this appeal is concerned, that the approval of the corporation commissioner was not obtained until after the trial. That approval was obtained before final judgment and all that the appellant prayed for in this connection, was that the court determine the relative rights and interests of the parties in and to the assets in question, and "make an order of distribution in conjunction with the distribution of said assets in conformity with the interests found to be in said parties." This has been done and the appellant has accepted the court's award.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 6, 1940.