[Civ. No. 8125. Third Dist. Oct. 1, 1952.]

SAM BOLOYAN et al., Respondents, v. IRVING J. CONTENTE et al., Appellants.

Horace E. Dunning for Appellants.

Albert L. Wagner and E. R. Vaughn for Respondents.

VAN DYKE, J.—This action was brought by plaintiffs (respondents here) to quiet their title to certain real and personal property. Their complaint alleged that they had contracted to sell the same upon terms to defendants (appellants here) ; that the buyers had breached the agreement; that notice of cancellation had been served upon them with demand for possession and that they had refused either to pay the price or to deliver possession of the property. Defendants answered, setting up a defense which for our purposes here can best be stated by summarizing the evidence received in support of it.

Early in September of 1948, plaintiff, Sam Boloyan, was engaged in the purchase of certain real property from an estate in course of probate. He agreed to resell this property to defendants upon certain conditions which included the negotiation by the purchasers of what is commonly called an "FHA" loan secured upon the property. Defendants made application for the loan to the Bank of America. The property qualified as security but Mr. Contente, for reasons not stated, was not accepted as a borrower. Boloyan suggested that Contente's brother-in-law, one Gus Economou could qualify for the loan and Economou agreeably made application therefor which was approved. During all this time Contente was in possession of the property, having made a partial down payment of $1,000 to Boloyan. Economou, as between Boloyan, Contente and himself, was merely an accommodation party. Contente was to be the real purchaser. The purchase price was set at $10,000 with a down payment of $3,500, the FHA loan being sufficient to furnish the balance. In concluding the transaction the following occurred: Boloyan conveyed the

property to Economou, receiving, in addition to Contente's payment of $1,000, the $6,500 produced by the loan. Boloyan made his conveyance without receiving the $2,500 deficit in the down payment. Economou executed to the defendants a written agreement to sell the property to them for a purchase price of $9,000, thus giving credit for the amount defendants had paid to Boloyan. The agreement stipulated that defendants would pay installment payments of $150 a month and otherwise contained provisions generally found in such agreements. Actually it was planned that these payments should be made direct to Boloyan who would dispose of each payment by, first, discharging the installment payments due the bank upon the loan, and, second, by applying the balance in payment to himself of the $2,500 which he had not received. To protect himself in respect to this debt he took a quitclaim deed from Economou. It was understood that Contente would occupy the property. Contente made payments for a while and then paid nothing further for about six months. Boloyan recorded the quitclaim deed. At this time, and obviously to readjust matters, there was executed by plaintiffs and defendants the contract referred to in the complaint, which contract stated the purchase price to be $8,612.40. Matters then stood in such way that the title subject to the loan was in Boloyan, subject to a contract of sale by plaintiffs to defendants for a reduced price which approximately credited to defendants the amounts they had theretofore paid on the original purchase price of $10,000. Thereafter defendants made no further payments, remained in possession of the property, failed and refused to pay on demand and sought to hold the property without further compensation to Boloyan. Their position was, and is here, that the proceedings recited involved two violations of FHA statutes and regulations: 1. Economou, who procured the loan, had no intention to reside, and did not reside, upon the property; and, 2. The arrangements concerning the $2,500 gap between the down payment and the loan fund constituted secondary financing. These violations, say appellants, rendered illegal and void all undertakings respecting the property, including the contract sued upon, since that contract was executed, as appellants claim, in aid of and for the purpose of carrying out the illegal arrangements that tainted the preceding conventions. The court therefore, say appellants, should have denied any relief to respondents and in addition should have given judg-

ment in favor of appellants against respondents for all moneys paid them by appellants.

■ We think the basic premise of appellants' arguments does not exist. Assuming, without deciding, that the violations of FHA statutes and regulations did occur, as contended by appellants, the result would not necessarily be that the contract of sale between respondents and appellants here sued upon would itself be illegal. The acts relied upon as acts of illegality had occurred long before this contract arose. Whatever effect they may have had on the legality of the original arrangements between Boloyan, Contente and Economou, the long-continued breach by appellants of their contract with Economou had resulted, as contemplated by all three parties, in the ·recording of the quitclaim deed from Economou to Boloyan. It was under those circumstances that Boloyan and Contente negotiated together concerning a direct purchase of the property by Contente from Boloyan. We think that the contract sued upon which resulted from these negotiations did not carry with it any taint that may have affected the prior agreements. ■ On the contrary, we think that this last contract was well within the rule laid down in Restatement of Law of Contracts, section 597, that ''A bargain collaterally and remotely connected with an illegal purpose or act is not rendered illegal thereby if proof of the bargain can be made without relying upon the illegal transaction.'' As stated in the comment to the quoted section, ''How closely a bargain must be connected with an illegal purpose in order to make the bargain itself illegal, is a question of degree.'' We think the trial court was justified in impliedly finding what it expressly declared in its memorandum opinion that the connection between the agreement sued upon and the antecedent illegal acts we have referred to was too remote to warrant the court in refusing to enforce the contract relied on by respondents.

The judgment is affirmed.

Peek, J., and Schottky, J. pro tem., concurred.