Filed 9/20/23  Wehrly v. Hawthorne Hangar Operations CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DAVID WEHRLY, | B321452 |
| Respondent, | (Los Angeles County Super. Ct. No. 21STCP00556) |
| v. | |
| HAWTHORNE HANGAR OPERATIONS, LP, et al., | |
| Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

The Jamison Law Firm, Guy E. Jamison and Chelsea M. Clayton for Appellant.

Beach Cities Law Group, Frank Sandelmann and Joshua A. Valene for Respondent.

————————————————

Dan Wolfe appeals from a judgment confirming an arbitration award in favor of David Wehrly. The arbitrator found aviation fueling services provided by Wolfe's company, Hawthorne Hangar Operations LP (HHO), breached a noncompetition clause in a purchase agreement executed when Wehrly sold his interest in HHO to Wolfe.[1]

Wolfe contends the arbitrator exceeded his powers in issuing the award because the award required the arbitrator to modify the terms of the purchase agreement, which the arbitration clause expressly prohibited, and the award conflicted with an earlier declaratory judgment from the trial court. He further argues the noncompetition clause is illegal and against public policy, and therefore cannot be enforced by the arbitrator or the courts.

We hold the arbitrator's ruling was based on his interpretation of the agreement, not a modification of it, and the ruling did not conflict with the earlier declaratory judgment, which involved a different agreement and different parties. Wolfe has forfeited his illegality challenge for failing timely to raise it before the arbitrator.

Accordingly, we affirm.

## BACKGROUND

We limit our summary to the facts necessary to resolution of this appeal. Additional background information appears in our Discussion, *post*.

---

[1] HHO originally was an appellant in this case, but stipulated to dismissal after its bankruptcy trustee settled with Wehrly.

### 1.    *Relevant history of HHO*

At all relevant times herein, Wehrly was a principal in Advanced Air LLC doing business as Jet Center Los Angeles (Jet Center), which among other things sold aircraft fuel at Hawthorne Municipal Airport (the airport).

In 2009, Wehrly, Wolfe, and others formed HHO to purchase and operate a property adjacent to the airport containing an airplane hangar and two underground fuel tanks (the Northrop property).  The seller, MS Kearney Northrop Avenue, LLC (MS Kearney), entered into a purchase agreement with HHO on November 12, 2009 (2009 purchase agreement).  The purchase agreement contained a paragraph 10.4, which stated:  "Fuel Tanks.  Buyer [i.e., HHO] covenants and agrees that Buyer shall not use the fuel tanks located on the Real Property for any purpose other than the fueling and refueling of (i) airplanes, helicopters and other equipment owned or directly managed by Buyer, and (ii) other airplanes, helicopters and other equipment which have been located on and occupied the Real Property for at least thirty (30) days pursuant to the terms and provisions of a written lease.  The foregoing covenant shall survive the Close of Escrow."

In 2014, Wehrly and the other partners sold their partnership interests in HHO to Wolfe.  The executed purchase agreement (2014 purchase agreement) contained a paragraph 10, entitled "Collateral Agreements" (boldface & underscoring omitted), stating, "In addition to the consideration set forth for the purchase of Sellers' Limited Partnership Interest, as a material consideration for the execution and performance of this [purchase agreement], the Parties hereby agree that the following undertakings shall be a condition to the Closing."

Subparagraph 10.2 under paragraph 10 stated, "Buyers' [i.e., Wolfe[2]] hereby acknowledge that [HHO] (the 'Buyer' specified therein) acquired the Hawthorne Hangar (the 'Real Property' specified therein) pursuant to a purchase agreement which contained the following covenant . . . ." Subparagraph 10.2 then quoted paragraph 10.4 from the 2009 purchase agreement in its entirety.

The 2014 purchase agreement contained an arbitration provision stating that "any controversy between the Parties arising out of this [purchase agreement] shall be submitted to binding arbitration." The provision further stated, "The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this [purchase agreement] nor to grant any remedy which is either prohibited by the terms of this [purchase agreement], or not available in a court of law." A separate provision entitled the prevailing party in a dispute to "reasonable expenses, including attorneys' fees and related costs . . . ."

In 2017, HHO, now fully controlled by Wolfe, entered into a fuel concession agreement with the City of Hawthorne that authorized HHO to sell aviation fuel at the airport through the fuel farm on the Northrop property. HHO began selling fuel to aircraft at the airport, including aircraft that did not belong to HHO nor had been located on the Northrop property for 30 or more days pursuant to a lease.

---

[2] The agreement refers to "Buyers" in the plural because the introductory paragraph identified the buyers as Wolfe "and Nominee."

## 2. *HHO's declaratory relief action concerning 2009 purchase agreement*

Contending that HHO was violating the fueling restriction in paragraph 10.4 of the 2009 purchase agreement, Wehrly and his company, Jet Center, challenged HHO's fueling operations before the City of Hawthorne. HHO then filed a declaratory relief action in superior court against MS Kearney (the original seller of the Northrop property), Jet Center, and others, challenging the legality and enforceability of paragraph 10.4 in the 2009 agreement.[3]

In a May 1, 2020 statement of decision, the trial court concluded that paragraph 10.4 was not contrary to federal regulations or grant assurances applicable to the airport, because HHO was not a tenant of the airport, but instead provided services to aircraft via the adjoining Northrop property, and paragraph 10.4 was part of an agreement between private parties. The court found no evidence that paragraph 10.4 violated any statute, law, or regulation, and therefore found there was insufficient evidence to declare paragraph 10.4 illegal. The court further found, however, that Jet Center could not enforce paragraph 10.4, because it was not a party to the 2009 purchase agreement nor was there language in the agreement suggesting an intention to benefit Jet Center. The court concluded that, although HHO had not demonstrated that paragraph 10.4 was unlawful, that paragraph was not valid, enforceable, or relevant as between HHO and Jet Center. Jet Center therefore was

---

[3] As noted, Jet Center is also known as Advanced Air, and was referred to by the latter name in HHO's declaratory relief action.

"precluded from using Section 10.4 as an instrument to prevent HHO from providing unrestricted fueling at the Hawthorne Airport."

### 3.     *Arbitration concerning 2014 purchase agreement*

Separate from HHO's declaratory relief action concerning the 2009 purchase agreement, Wehrly initiated an arbitration against HHO and Wolfe asserting breach of the 2014 purchase agreement and other causes of action.  After hearing evidence and argument, the arbitrator issued a binding arbitration award in Wehrly's favor.

Looking to the language of the 2014 purchase agreement and statements by the parties and their attorneys leading up to that agreement (largely appearing in e-mails), the arbitrator concluded "the respective intents of Wolfe and Wehrly was that [paragraph] 10.4 [of the 2014 purchase agreement] was binding on both of them, including HHO, without any qualification." Rejecting Wolfe's contentions to the contrary, the arbitrator wrote, "Wolfe's concern about the future impact of 10.4 does not appear in the final agreement.  Nor is there language in the agreement that 10.4 was inserted merely to acknowledge that it had been a term in the 2009 Northrop transaction or that it is arguably illegal or unlawful."[4]

The arbitrator further found that "HHO breached the agreement by fueling aircraft which it did not own or had not

---

[4] The appellants' appendix does not contain full transcripts of the arbitration nor most of the parties' briefing before the arbitrator, and thus, apart from the arguments described in the award itself, we are unable to summarize the parties' specific arguments as to the intent behind paragraph 10.4.

been located on HHO['s property] for at least thirty days pursuant to a lease."

The arbitrator calculated damages based on profits Wehrly's company Jet Center lost due to competition from HHO's fueling operations, which came out to $701,098. The arbitrator also awarded Wehrly $247,054.10 in attorney fees, and $80,030 in costs.

The arbitrator granted Wehrly injunctive relief, ordering the parties to comply with the fueling restriction in paragraphs 10.2 and 10.4 of the 2014 purchase agreement.

### 4. *Confirmation of arbitration award*

The trial court confirmed the arbitration award over HHO's and Wolfe's opposition. The court rejected the argument that the award was contrary to statutory authority and public policy because paragraph 10.4 "restrains competition and monopolizes trade pursuant to Business & Professions Code §§ 16600, 16720 and 17200." The court found this argument barred by the statute of limitations and forfeited because it had not been raised during arbitration.

On the merits, the court found paragraph 10.4 was not "an illegal provision that would necessitate vacating the arbitration award." The court reasoned that Business and Professions Code section 16602 exempted noncompetition agreements from the prohibition under Business and Professions Code section 16600 in the case of a partner disassociation, and, additionally, paragraph 10.4 was a lawful restrictive covenant on the use of the Northrop property.

The trial court also disagreed with HHO and Wolfe that the arbitrator had modified the terms of the 2014 purchase agreement through the arbitrator's interpretation of paragraph

10.4, or had effectively added nonparty Jet Center to the arbitration by basing damages on Jet Center's lost profits. The court found the award did not violate the judgment in HHO's declaratory relief action, because the two matters were not related.

The trial court entered judgment awarding Wehrly the damages and injunctive relief obtained in arbitration, as well as accrued prejudgment interest and attorney fees and costs incurred bringing the petition to confirm the arbitration award. The total award was $1,200,439.73.

HHO and Wolfe timely appealed. As noted, HHO and Wehrly later stipulated to HHO's dismissal from the appeal, leaving Wolfe as sole appellant.

## DISCUSSION

### A.      Governing Law

When "an arbitrator has issued an award, the decision is ordinarily final and thus 'is not ordinarily reviewable for error by either the trial or appellate courts.' [Citation.]" (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 72 (*Sheppard Mullin*).) This is so " 'whether or not such error appears on the face of the award and causes substantial injustice to the parties.' " (*SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 616, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 (*Moncharsh*).) The reason for this rule is that "parties who enter into arbitration agreements are presumed to know the arbitrator's decision will be final and binding; 'arbitral finality is a core component of the parties' agreement to submit to arbitration.' [Citation.]" (*SingerLewak*, at p. 616, quoting *Moncharsh*, at p. 10.)

8

The Code of Civil Procedure specifies exceptions to this rule of finality. The exception relied upon by Wolfe, both in the trial court and in this appeal, is Code of Civil Procedure section 1286.2, subdivision (a)(4), which allows a court to vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

"On appeal, we review de novo a trial court's decision on undisputed facts to confirm, correct or vacate an arbitration award." (*Taska v. The RealReal, Inc.* (2022) 85 Cal.App.5th 1, 9.) Like the trial court, "we may not ' "review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face. Instead, we restrict our review to whether the award should be vacated under the grounds listed in [Code of Civil Procedure] section 1286.2." ' [Citation.]" (*State Farm Mutual Automobile Ins. Co. v. Robinson* (2022) 76 Cal.App.5th 276, 282.)

## B. The Arbitrator Did Not Modify the 2014 Purchase Agreement or Violate the Judgment in the Declaratory Relief Action

Wolfe contends the award effectively modified the terms of the 2014 purchase agreement, and thus the arbitrator exceeded his powers under the arbitration clause, which expressly provided, "The arbitrator shall not have any power to alter, amend, modify or change any of the terms of this [purchase agreement] nor to grant any remedy which is either prohibited by the terms of this [purchase agreement], or not available in a court

9

of law." Wolfe further argues the award conflicted with the judgment in the declaratory relief action. We disagree.

Wolfe interprets paragraph 10.2 of the 2014 agreement as the parties' mere acknowledgment of the existence of paragraph 10.4 in the 2009 purchase agreement, not their agreement to be bound by it. The arbitrator's contrary conclusion, Wolfe contends, required the arbitrator to rewrite the 2014 agreement to omit the acknowledgment language from paragraph 10.2.

The arbitration award made clear, however, that the arbitrator was not modifying the agreement, but interpreting its existing terms, based on the language of the agreement and the intentions of the parties expressed during their negotiations. The arbitrator devoted several pages to summarizing e-mails exchanged during the negotiations, and further concluded, "Nor is there language in the agreement that 10.4 was inserted merely to acknowledge that it had been a term in the 2009 Northrop transaction." Wolfe's challenge to this arbitral finding would oblige us to evaluate the merits of the arbitrator's interpretation, which is beyond the permissible scope of our review.

Wolfe further argues that by calculating Wehrly's damages based on Jet Center's lost profits, the arbitrator effectively rewrote the 2014 purchase agreement to add Jet Center as a party. Wolfe also argues the award exceeded the arbitrator's powers by granting relief not available in a court of law, that is, damages to a nonparty.

This argument fails because the arbitrator did not award damages to Jet Center. The award, and the trial court's judgment confirming the award, gave all damages to Wehrly. Wolfe's challenge therefore is not to the recipient of the award, but to the basis of the calculation of that award. That challenge,

10

once again, is beyond the scope of our review.  (*Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1384 ["To the extent that appellant's argument is intended to be a challenge to the method or formula employed by the arbitrator to calculate . . . compensatory damages, we do not address this issue because it is at most an error of law, not reviewable by the courts."].)

We also reject Wolfe's contention that the arbitrator's basing damages on Jet Center's lost profits conflicted with the trial court's judgment in HHO's declaratory relief action, which stated that Jet Center could not enforce paragraph 10.4 against HHO.  We note the declaratory relief action concerned the 2009 purchase agreement, not the 2014 purchase agreement at issue in the arbitration.  Assuming arguendo the trial court's judgment as to paragraph 10.4 in the 2009 agreement applies to paragraph 10.4 in the 2014 agreement, a question we do not decide, the reason the trial court ruled Jet Center could not enforce paragraph 10.4 was that Jet Center was not party to or an intended beneficiary of the 2009 agreement.  Wehrly, however, was a party to the 2014 agreement, and it was he, not Jet Center, that initiated the arbitration to enforce paragraph 10.4.  The arbitration award does not conflict with the declaratory judgment or the reasoning behind it.

Wolfe quotes *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, which stated, "[T]he arbitrator ha[s] authority to grant relief he consider[s] 'just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach.' [Citations.]"  (*Id.* at p. 871.)  Wolfe argues that by basing Wehrly's damages on Jet Center's losses, the arbitrator

11

issued an award that could not be rationally derived from the 2014 purchase agreement, to which Jet Center was not a party. It is rational to assume, however, that Jet Center's lost profits resulted in financial losses for Wehrly, its principal. Whether Wehrly sufficiently proved his personal losses, and whether the arbitrator properly calculated them, is, again, beyond the scope of our review, but we cannot conclude the award was not " 'rationally derived from the contract and the breach.' " (*Ibid.*)

## C. Wolfe Fails To Show He Properly Raised His Claim of Illegality Before the Arbitrator, and Thus Has Forfeited it

Wolfe contends that paragraph 10.4 "is a per se violation of California statutes forbidding unfair competition," and "California courts may not enforce illegal, anticompetitive agreements that harm the public and are contrary to the public's unwaivable statutory rights." In support, Wolfe cites provisions of the Business and Professions Code and federal antitrust law.

Like the trial court, we conclude these arguments were not properly or timely presented to the arbitrator, and are therefore forfeited. We express no opinion as to the trial court's other bases for rejecting these arguments.

### 1. Relevant law

In *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, our Supreme Court held that "the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award." (*Id.* at p. 609.) In that event, "the issue is one for judicial determination . . . , and any preliminary

determination of legality by the arbitrator . . . should not be held to be binding upon the trial court." (*Ibid.*) In *Loving & Evans*, the agreement at issue had been executed by unlicensed contractors, and was entirely illegal and void. The court therefore held the trial court erred by confirming an arbitration award based on that illegal agreement. (*Id.* at pp. 614–625.)

In *Moncharsh*, *supra*, 3 Cal.4th 1, the high court limited the holding of *Loving & Evans* to situations "where a party claimed the entire contract or transaction was illegal." (*Moncharsh*, at p. 32.) "By contrast, when . . . the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable." (*Id.* at p. 30.) The court rejected the notion that "judicial review of an arbitrator's decision is routinely available where one party claims merely that a portion of a contract is illegal." (*Id.* at p. 32, fn. 14; see *Sheppard Mullin*, *supra*, 6 Cal.5th at p. 77 [discussing *Moncharsh*].)

The Supreme Court stated, "[T]here may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.) "Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground. The reason is clear: the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure. [Citation.] Absent a

13

clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh*, at p. 32; see *Sheppard Mullin*, *supra*, 6 Cal.5th at pp. 77–78 [under *Moncharsh*, courts should "be wary of" claims that a portion of a contract is illegal "in the absence of a clear expression of *statutory* policy"].)

The court also emphasized that a party must raise the issue of a contract's partial illegality *before the arbitrator* or forfeit the right to challenge the arbitration award on that basis in the trial court. (*Moncharsh*, *supra*, 3 Cal.4th at p. 30.) The court gave two reasons for this rule. First, "[a]ny other conclusion is inconsistent with the basic purpose of private arbitration, which is to finally decide a dispute between the parties." (*Ibid.*) Second, "we cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award. A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.' [Citations.]" (*Ibid.*)

### 2. Additional procedural background

As noted, the record on appeal does not contain full transcripts of the arbitration nor most of the parties' written filings before the arbitrator. Wolfe contends, however, that the limited record presented to the trial court during the award confirmation proceeding was sufficient to establish he properly raised the issue of illegality in the arbitration. We summarize the relevant portions of that record here.

Wolfe provided the trial court with a page of the reporter's transcript from the arbitration in which the arbitrator asked if

14

HHO and Wolfe were raising any affirmative defenses apart from unclean hands.  Counsel stated, "We are asserting illegality, unenforceability, and invalidity."  Another attorney asked, "As to the 2014 contract; correct?"  Counsel replied, "Yes, as to 10.4."

The arbitrator's interim award referred to testimony and evidence indicating that Wolfe in the past had objected to Wehrly and others that paragraph 10.4 was illegal or improper.  The interim award also summarized the trial court's declaratory relief judgment finding insufficient evidence that paragraph 10.4 in the 2009 purchase agreement was illegal.  The interim award, however, did not refer to or indicate that HHO and Wolfe raised any arguments concerning illegality before the arbitrator, and the interim award neither discussed nor made rulings on the issue of illegality.  Rather, the interim award summarized the central issue of the dispute as "the conflicting contentions that Wolfe agreed or did not agree to abide by paragraph 10.4 in the sale, whether Wolfe breached 10.4 and, if so, what damages [Wehrly] incurred as a result of that breach.  The issue, then, is to determine Wehrly's and Wolfe's mutual or respective intents concerning that transaction."  On these issues, the arbitrator ruled in Wehrly's favor, finding Wolfe and HHO had breached paragraph 10.4.

HHO and Wolfe moved to modify the interim award.  That motion is not in the record on appeal.  In his final award, the arbitrator summarized the arguments in the motion:  HHO and Wolfe contended Wehrly had offered insufficient evidence of damages; the award conflicted with the trial court's ruling in the declaratory relief action, including its conclusion that paragraph 10.4 was unenforceable and invalid; and paragraph 10.2 was only

15

an acknowledgement of the existence of paragraph 10.4 in the 2009 agreement, and not intended to bind HHO.

Wehrly opposed the motion to modify the interim award. That opposition also is absent from the record on appeal. As summarized in the final award, Wehrly argued the modification motion was " 'an attempt to re-arbitrate the matter,' " and further was untimely and exceeded the scope of certain provisions of the Code of Civil Procedure.

HHO and Wolfe filed a response to Wehrly's opposition. That response is included in the appellate record, and is *the first* indication of HHO and Wolfe citing statutory bases for their claims of illegality. In the response, HHO and Wolfe contended, inter alia, that they had "noted . . . at the arbitration, in their briefing and in [the motion to modify the interim award]" that Wehrly was attempting to enforce paragraph 10.4 for the illegal purpose of protecting Jet Center's "aviation fueling monopoly." HHO and Wolfe argued this was a "restraint of trade" prohibited by Business and Professions Code sections 16720 and 16726, and an unlawful, unfair, and fraudulent business practice in violation of Business and Professions Code section 17200 et seq., the Unfair Competition Law. HHO and Wolfe warned that "[a]rbitrators exceed their powers by issuing an award that violates a party's statutory rights or that contravenes an explicit legislative expression of public policy." They asked the arbitrator to modify the interim award "as requested in [the motion to modify], which would then comport with California law and relevant public policy regarding unfair, unlawful competition."

In the final award, the arbitrator addressed HHO's and Wolfe's response to Wehrly's opposition. The arbitrator wrote, "[HHO and Wolfe] . . . argued, as they did throughout the

16

arbitration, that section 10.4 is an illegal, unenforceable provision of the [2014 purchase agreement] and, as such, should be modified to comport with California law 'and assure [t]hat the anticompetitive, unfair, illegal fueling restrictions set forth in section 10.4 are not inflicted on the aviation fuel consumers at Hawthorne Airport.' "[5]

The arbitrator denied the motion to modify the interim award, stating the motion exceeded the permissible scope of Code of Civil Procedure sections 1284 and 1286.6, subdivision (a), concerning correction of arbitration awards, and further was "an attempt to reargue the validity of [paragraph] 10.4, which has already been decided. Additionally, the policy regarding fair, competitive practices in California can only be established, if even relevant, by expert testimony, of which there was none."

### 3.    Analysis

As an initial matter, *Moncharsh*, not *Loving & Evans*, controls here, because Wolfe is not challenging the legality of the entire 2014 purchase agreement, but only paragraphs 10.2 and 10.4.

*Moncharsh* sets forth two principles relevant to this appeal: (1) a party must raise the issue of a contract's partial illegality before the arbitrator or forfeit judicial review of that issue; and

---

[5] When quoting the arbitration award in his appellate briefing, Wolfe at times omits the internal quotation marks, which makes it appear the arbitrator made findings when in fact he was merely quoting HHO's and Wolfe's arguments. Specifically, the arbitrator did not find that HHO's participation in the fueling business was a " 'good outcome under California law and consistent with the policies regarding fair competition by businesses in the state,' " as Wolfe's briefing suggests.

17

(2) the claim of illegality must be tethered to an explicit legislative expression of public policy, that is, a "clear expression of *statutory* policy." (*Sheppard Mullin*, *supra*, 6 Cal.5th at pp. 77–78.) The question then is whether Wolfe satisfied these requirements.

It is Wolfe's burden as appellant to overcome the presumption that the trial court's forfeiture ruling was correct, and to provide an adequate record to demonstrate error. (See *Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 610.) Wolfe has provided a very limited record from the arbitration itself, omitting most of the reporter's transcript and almost all of the parties' filings. Given Wolfe's burden, we assume those omitted transcripts and filings would not support his claim of error.

The limited record Wolfe has provided does not establish that he or HHO properly raised a claim of illegality based on a clear expression of statutory policy. The one page from the reporter's transcript cited by Wolfe establishes his counsel asserted "illegality" as a defense, but did not state a basis for that illegality or cite any statutory authority. The interim award references no arguments concerning illegality and makes no rulings on that issue, belying Wolfe's assertion that illegality was at issue in the arbitration.

It was not until the arbitrator had issued the interim award, and Wolfe and HHO filed a response to Wehrly's opposition to their motion to modify the award, that Wolfe and HHO first argued paragraph 10.4 was illegal under provisions of the Business and Professions Code. The arbitrator in the final award rejected that argument, finding it went beyond the permissible scope of a modification request, was an attempt to

18

reopen issues already decided, and lacked expert evidentiary support.

Under these circumstances, we cannot conclude Wolfe satisfied the *Moncharsh* requirements to preserve the issue of illegality for judicial review. Again, the two reasons behind the *Moncharsh* forfeiture rule are to ensure the arbitrator has an opportunity to rule on the illegality issue before the courts address it, and to avoid a party holding an illegality challenge as a trump card to play if the arbitrator renders an adverse decision.

Merely asserting a defense of "illegality," without reference to any statutory basis for that defense, is not enough to preserve that issue for judicial review of an arbitration award, because it does not provide enough information for the arbitrator to reach a decision. Indeed, it appears from the record that Wolfe and HHO, after asserting an illegality defense, did not in fact offer support for that defense prior to the arbitrator issuing a decision, because the interim award makes no mention of any illegality claims. Thus, the record does not establish the arbitrator had an opportunity to rule on the illegality issue prior to rendering a decision.

As for Wolfe's and HHO's statutory arguments raised in their response to Wehrly's opposition to their request to modify the interim award, we agree with the arbitrator that those arguments were an untimely attempt to reopen matters that should have been addressed in Wolfe's and HHO's case-in-chief. Just as it would be improper to vacate an arbitrator's award based on a claim of illegality raised for the first time in court, it would be improper to vacate an award based on last-minute claims of illegality the arbitrator justifiably declined to address because they could have been raised earlier. Vacating an award

19

on that latter basis would promote the gamesmanship decried in *Moncharsh*, encouraging parties to hold certain issues in reserve until the arbitrator has announced an adverse interim decision, and then use claims of illegality to undercut that decision and reopen the proceedings.[6]

This is not to say there could not be circumstances in which an illegality challenge raised late in an arbitration would be sufficient to preserve the issue for judicial review, for example when the illegal implications of an award do not appear until the award is issued. In this case, however, the enforceability of the fuel restriction in paragraph 10.4 was front and center in the arbitration, and to the extent Wolfe wished to challenge its legality on the basis of the Business and Professions Code or other statutory authority, he could have, and should have done so from the outset. Instead, he waited to raise this challenge until after the arbitrator issued his interim award and then only in reply to Wehrly's opposition to Wolfe's and HHO's motion to modify that interim award.

Wolfe notes that in the final award, the arbitrator stated, "[HHO and Wolfe] . . . argued, *as they did throughout the arbitration*, that section 10.4 is an illegal, unenforceable

---

[6] Wolfe, in contesting forfeiture in his appellate briefing, fails to cite to, or rely on his and HHO's response to Wehrly's opposition to the modification motion. He instead relies on his counsel's assertion of the illegality defense, and the arbitrator's statement in the final award that he and HHO "argued, as they did throughout the arbitration, that section 10.4 is an illegal, unenforceable provision of the [2014 purchase agreement]." Wolfe thus never contends that the arguments in his and HHO's response are themselves sufficient to preserve the issue of illegality for judicial review.

provision of the [2014 purchase agreement]." (Italics added.) Wolfe contends this establishes he and HHO raised the issue of illegality throughout the proceedings, presumably before the arbitrator had issued the interim award.

At best, this comment from the arbitrator establishes Wolfe and HHO made some arguments concerning illegality prior to issuance of the interim decision, but it does not establish what arguments they made and particularly, the statutory or public policy basis for any such claim of illegality. Again, the fact that the interim award did not refer to or address any illegality arguments strongly suggests whatever arguments were raised were as vague as the initial assertion of the illegality defense. Wolfe has provided no other record to demonstrate the contrary.

Wolfe argues, "[I]llegality can be raised by any party or the court even if it is not plead[ed], at any time." He quotes *Tevis v. Blanchard* (1954) 122 Cal.App.2d 731 (*Tevis*), which stated, " 'The law is very well settled that where the defendant does not set up the defense of illegality, but the case made by the plaintiff or the defendant shows illegality, it becomes the duty of the court, *sua sponte,* to refuse to entertain the action.' [Citation.] Accordingly, 'if the case presents one of illegality of the contract, it must be considered by the court whether pleaded or unpleaded.' [Citations.]" (*Id.* at p. 733.) Wolfe also cites *Fellom v. Adams* (1969) 274 Cal.App.2d 855 (*Fellom*), which stated, " 'Whatever the state of the pleadings, when the evidence shows that the plaintiff in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids. [Citations.] It is

21

immaterial that the parties, whether by inadvertence or consent, even at the trial do not raise the issue. The court may do so of its own motion when the testimony produces evidence of illegality. [Citation.] It is not too late to raise the issue . . . even on appeal.' [Citation.]" (*Id.* at p. 863.)

*Tevis* and *Fellom* are distinguishable because they concerned trials, in which appellate review was the norm, as opposed to arbitrations, in which appellate review is prohibited absent limited exceptions. (*Tevis*, *supra*, 122 Cal.App.2d at p. 732; *Fellom*, *supra*, 274 Cal.App.2d at p. 857.) They also involved claims that an entire contract or transaction was illegal, not a portion of a contract, a distinction important in *Moncharsh*. (*Moncharsh*, *supra*, 3 Cal.4th 1, 30, 32; see *Tevis*, at p. 732 [appellant claimed promissory note void as illegally issued security or illegal advance upon purchase of stock; *Fellom*, at p. 857 [defendant claimed plaintiffs could not recover on promissory note because they had failed to prove they were licensed real estate salesmen and brokers].) These cases therefore are not instructive on the matter before us. Further, to read *Tevis* and *Fellom*, as Wolfe urges, to allow parties to obtain judicial review of an arbitration award based on an untimely challenge to the legality of a portion of an instrument, would eviscerate the forfeiture rule of *Moncharsh*, which requires claims of partial illegality to be raised properly before the arbitrator.

## DISPOSITION

The judgment is affirmed.  Respondent David Wehrly is awarded his costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:


ROTHSCHILD, P. J.


WEINGART, J.